NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARRY WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>GARY M. LANIGAN, et al.,<br><br>Defendants. | Civil Action No. 18-9593 (JLL)<br><br><br>OPINION |

**LINARES**, Chief District Judge:

Currently before the Court is *Pro Se* Plaintiff Barry Williams' Complaint (ECF No. 1) and application to proceed *in forma pauperis* (ECF No. 5). Based on Plaintiff's application, it is clear that leave to proceed *in forma pauperis* is warranted in this matter, and the Court will therefore grant Plaintiff's application to proceed *in forma pauperis*. As the Court is granting Plaintiff *in forma pauperis* status in this matter, this Court is required to screen his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). Under the statute, this Court must dismiss Plaintiff's claims if they are frivolous, malicious, fail to state a claim for relief, or seek damages from a defendant who is immune. For the reasons set forth below, this Court will dismiss Plaintiff's complaint in its entirety without prejudice.

## I. BACKGROUND

In his complaint, Plaintiff seeks to raise a claim pursuant to 42 U.S.C. § 1983 against three supervisory officials at East Jersey State Prison and the New Jersey Department of Corrections for a policy they allegedly produced regarding the prison's educational programs. Specifically, Plaintiff seeks to sue Gary Lanigan, the Commissioner of the DOC; Patrick Nogan, the

1

Administrator of the prison; and Clavig Spires, the Assistant Superintendent of the prison. (ECF No. 1 at 4–5). The policy Plaintiff challenges was succinctly summarized in a DOC memorandum[1] provided by Plaintiff, which states as follows:

> Effective[] July 1, 2014, inmates will be awarded institutional job opportunities, and single cell housing based on participation/enrollment in the facility's education program. Specifically, if [a prisoner is] on the Education Waiver List, and [the prisoner does] not enroll in school, [the prisoner] will only be eligible for, and assigned to, the lowest paid, wing based job opportunities, and double cell housing assignments. However, if you are on the waiver list, and immediately request to attend school you will be allowed to keep your current job. School and work schedules will be coordinated to allow an inmate to pursue the facility's educational opportunities, and to remain in a desired institutional job.
>
> Additionally, any inmate on the waiver list who does not voluntarily enroll in school shall not be eligible for any incentive programs. This directive will not affect any inmate who has a high school diploma, GED, or is currently enrolled in school.

(ECF No. 1-1 at 12). Plaintiff also alleges that there is a second policy, which he does not clearly define, which makes the education requirement mandatory for those inmates who have a sentence of less than ten years' imprisonment. (ECF No. 1 at 12).

Although Plaintiff's complaint provides numerous details regarding his attempts to fight these policies through prison grievances and appeals to the Appellate Division therefrom, his complaint provides few details as to how the policy deprived him of any constitutional rights. Plaintiff does allege that he was told in April 2015 that he would be subjected to disciplinary charges if he failed to attend classes by a member of the prison's education department who is not named as a defendant, despite his not being subject to the mandatory education requirement as his

---

[1] Although this memorandum is dated October 16, 2018, it is marked as a reissue of a previous memo (*see* ECF No. 1-1 at 12), and Plaintiff was apparently aware of the policy as of April 2015. (*See* ECF No. 1 at 6, 8). Plaintiff further alleges in his complaint that he is apparently aware that the prison has been using this policy since July 1, 2014. (*Id.* at 13).

2

sentence is for twenty-five years to life. (ECF No. 1 at 6, 8). Plaintiff further states that when he complained to this education department head, he was told by her that he would not be permitted to withdraw from classes. (ECF No. 1 at 9). Plaintiff alleges, however, this person was eventually overruled by Defendant Lanigan who directed her to provide Plaintiff and others with the forms necessary to waive non-mandatory education requirements. (*Id.* at 12).

In October 2016, Plaintiff was called to the office of the head of the prison's food service department. (*Id.* at 12). At that time, Plaintiff alleges he suffered "retaliation" when he was told that "if [he] did not re[-]sign up for the school program" he "would not be allow[ed] to get a job assignment" in her department because he did not have a diploma or GED. (*Id.* at 12–13). Later that month, Plaintiff was also told by a member of the staff of the prison's law library that he would lose law library privileges if he failed to resume schooling. (*Id.* at 14). Later that month, Plaintiff alleges he was also threatened with a transfer if he failed to cease his complaints by another prison employee not named as a Defendant in this action. (*Id.* at 14). Plaintiff was thereafter told once again in June 2017, this time by Defendant Spires, that his failure to resume his education would prevent him from getting a prison job. (*Id.* at 15). Plaintiff was apparently transferred to a different prison. (*Id.*).

## II. DISCUSSION

### A. Legal Standard

Per the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or seeks damages from a state employee, *see* 28 U.S.C. § 1915A. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is

immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff has been granted *in forma pauperis* status.

As the Supreme Court has stated, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a *sua sponte* screening for failure to state a claim[2], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Analysis**

Plaintiff seeks to bring a claim against three supervisory prison defendants[3] based on alleged violations of his constitutional rights arising out of East Jersey State Prison's education policies. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

[3] Although Plaintiff mentions several other prison employees with whom he interacted, he has not named any such officials, and it appears that his contention here is that the educational policy itself is what denied him his rights. This Court therefore does not construe the complaint to be raising claims against any other prison employee. To the extent Plaintiff wishes to raise a claim against individuals other than the three named Defendants, he may do so by filing an amended complaint.

acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (section 1983 provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Supervisory defendants, however, may not be held liable for the actions of their subordinates pursuant to § 1983 under a theory of vicarious liability. *See Iqbal*, 556 U.S. at 675-76; *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, the supervisory official must himself have been personally responsible for some violation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 690-91. In order to raise a claim against a supervisor based on the issuance of a policy, the plaintiff must allege facts which would show that the defendant in question was responsible for the promulgation and adoption of a specific policy, practice, or rule and that this policy directly caused a violation of the plaintiff's federal civil rights. *Id.*

Although Plaintiff in this matter has alleged that the three named Defendants were responsible for the prison's educational policies, and appears to believe that this policy is violating his rights, Plaintiff has utterly failed to identify what rights he believes were impugned by the adoption of these educational policies, as opposed to misunderstandings of the policy by other officials. To the extent Plaintiff is asserting that the policy violated his rights insomuch as he was denied a particular prison job because of his refusal to participate in a prison education, the Court notes that a prisoner has no right to a prison job or to any particular prison job. *See, e.g., Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014); *see also James v. Quinlan*, 866

F.2d 627, 629-30 (3d Cir. 1989); *Morales v. Grondolsky*, 2009 WL 1545841, at *3 (D.N.J. May 29, 2009). Thus, to the extent Plaintiff alleges he was denied a particular job because he refused to comply with the education policy, such a claim would fail to state a claim for relief, either as a supervisory claim or to the extent he seeks relief against Defendant Spires based on his telling Plaintiff he would not get a prison job absent participation in education classes.

To the extent Plaintiff is instead trying to assert that his being temporarily forced to go to education as if it were mandatory under a threat of disciplinary proceedings by a prison employee despite Plaintiff not being subject to the mandatory education rule, the Court notes that Plaintiff has specifically alleged that this was in contravention of the policy. By plaintiff's own admission, the mandatory education policy does not apply to prisoners sentenced to more than ten years, and the policy encouraging education by requiring a prisoner to get a GED to obtain better prison employment or a single occupant cell is by its own terms entirely optional. A prisoner may not enjoy having poor employment prospects and being forced to share a cell, but the policy Plaintiff has identified did not require his attendance at the educational classes, and thus the policy cannot be said to have actually caused the issues Plaintiff alleges he faced when he wished not to attend classes. As the policy did not cause the alleged issue in that case, it cannot form a basis for supervisory liability.[4] *Monell*, 436 at 690-91.

Having reviewed the remainder of Plaintiff's allegation, this Court is aware of no specific constitutional right which has been impugned by the two educational policies Plaintiff has

---

[4] Even if the policy *did* require him to attend, it is doubtful Plaintiff could state a claim for relief based on mandatory education requirements as a convicted state prisoner has no federally protected right not to be put to work during his imprisonment. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999); *Plaisance v. Phelps*, 845 F.2d 107, 108 (5th Cir. 1988); *Omasta v. Wainwright*, 696 F.2d 1304, 1305 (11th Cir. 1983); *Stiltner v. Rhay*, 322 F.2d 314, 315 (9th Cir.), *cert. denied*, 375 U.S. 915 (1963); *see also Bryant v. Lanigan*, No. 15-3205, 2015 WL 5562828, at *2-3 (D.N.J. Sept. 21, 2015); *Shabazz v. New Jersey Comm'r of Dep't of Corr.*, No. 13-4968, 2014 WL 2090688, at *2 (D.N.J. May 19, 2014). Thus, to the extent that the education requirement could be construed as equivalent to requiring a prisoner to work, there would likely be no right not to be required to attend classes and work towards some educational end.

identified. As Plaintiff has failed to identify any cognizable violation of his rights caused by these policies, and has failed to provide any allegations which would establish an alternative basis for supervisory relief against the three Defendants named in this matter as well as failed to plead any claims for relief based on the three named Defendants' own direct actions, Plaintiff has not pled a cognizable claim for relief against any of the three currently named Defendants. Plaintiff's complaint must therefore be dismissed without prejudice for failure to state a claim for which relief may be granted at this time. Because this Court will dismiss Plaintiff's complaint without prejudice, however, this Court will permit Plaintiff to file an amended complaint addressing the deficiencies identified in this opinion within thirty days.

### III. CONCLUSION

For the reasons stated above, Plaintiff's application to proceed *in forma pauperis* is granted, his complaint shall be dismissed without prejudice in its entirety, and Plaintiff shall be granted leave to file an amended complaint, if he so chooses, within thirty days. An appropriate Order follows this Opinion.

Dated: August 29th, 2018

JOSE L. LINARES
Chief Judge, United States District Court